UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
RENA SYLVESTER a/k/a RENA COSTELLO                    Case No: 17-cv-3116

                              Plaintiff,

                    -against-                          **VERIFIED COMPLAINT**

EAST ISLIP UNION FREE SCHOOL DISTRICT,                **Jury Trial Demanded**
EAST ISLIP MIDDLE SCHOOL, JOHN V. DOLAN,
MARK BERNARD, JASON STANTON and
ALISE BECKER-SANTA,

                              Defendants.
-------------------------------------------------------------------------------X

        Plaintiff RENA SYLVESTER a/k/a RENA COSTELLO by her attorneys the Law Offices

of David A. Antwork, P.C. as and for her Verified Complaint against Defendants, EAST ISLIP

UNION FREE SCHOOL DISTRICT, EAST ISLIP MIDDLE SCHOOL, JOHN V. DOLAN,

MARK BERNARD, JASON STANTON and ALISE BECKER-SANTA, respectfully shows to

this Court and alleges the following upon information and belief:

                              **NATURE OF THE ACTION**

        1.      This is a civil action seeking compensatory damages, punitive damages, costs and

attorney's fees, to redress numerous violations of the Plaintiff's rights under (i) the Civil Rights

Act of 1964, as amended (Title VII- 42 U.S.C. §2000e, et seq.) and related retaliation claims; (ii)

the Fourteenth Amendment to the United States Constitution right to Equal Protection (42 U.S.C.

§ 1983, et seq.) and related conspiracy and retaliation claims; (iii) the Age Discrimination in

Employment Act (29 U.S.C. §621, et seq.) and related retaliation claims; and (iv) the New York

State Human Rights Law, and related retaliation claims.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 because the matters in controversy arise under the United States Constitution and laws of the United States.

3.      This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. §1367 because those claims arise under the same nucleus of operative facts as the federal claims.

4.      On or about November 17, 2016, the Plaintiff filed a charge of discrimination, harassment/hostile work environment and retaliation against the Defendants with the U.S. Equal Employment Opportunity Commission ("EEOC").

5.      The EEOC has issued a Notice of Right to Sue to the Plaintiff, dated February 23, 2017, which was postmarked Friday, February 24, 2017 and not received by counsel for the Plaintiff until Monday, February 27, 2017.

6.      This action has been commenced within ninety days of the Plaintiff's receipt of the Notice of Right to Sue.

7.      On or about December 21, 2016, prior to commencing the within action, Plaintiff timely filed and served a Notice of Claim upon the Defendants, pursuant to New York General Municipal Law §50-h.

8.      An examination of the Plaintiff pursuant to New York General Municipal Law §50-h was conducted on February 15, 2017.

9.      Plaintiff has complied with all the conditions precedent to commencing the within action set forth in New York General Municipal Law §50-e and New York Education Law §3813.

10.     More than thirty days have elapsed since the Notice of Claim was served upon the Defendants.

11.     This Complaint is in compliance with, and is timely under, New York General Municipal Law §50-e and New York Education Law §3813.

12.     All prerequisites to the filing of this action have been met by the Plaintiff.

13.     Venue in the Eastern District of New York is proper pursuant to 28 U.S.C. §1391(b) inasmuch as the events that gave rise to the Plaintiff's claims took place within the Eastern District.

**PARTIES**

14.     At all times relevant hereto, Plaintiff RENA SYLVESTER a/k/a RENA COSTELLO, is an individual who was and is a resident and domiciliary of the State of New York, County of Suffolk, with a principal residence located at 31 Hawkins Road, Stony Brook, New York 11790.

15.     Plaintiff was born on August 24, 1964, and, as such, at all times relevant hereto, falls within the protections of the Age Discrimination in Employment Act and the NYS Human Rights Law.

16.     Upon information and belief, at all times relevant hereto, Defendant EAST ISLIP UNION FREE SCHOOL DISTRICT ("EIUFSD") was and is a school district organized and existing under the laws of the State of New York with district offices located in the County of Suffolk at 1 Craig B. Gariepy Avenue, Islip Terrace, New York 11752.

17.      Upon information and belief, at all times relevant hereto, Defendant EAST ISLIP MIDDLE SCHOOL ("EIMS") was and is a public educational institution located within, and operated by, the EIUFSD, with an address of 100 Redmen Street, Islip Terrace, New York 11752.

18.    Upon information and belief, EIUFSD, and by extension, EIMS, being duly organized and existing under the laws of the State of New York, are employers under Title VII, the New York State Human Rights Law and the Age Discrimination in Employment Act.

19.    Upon information and belief, at all times relevant hereto, Defendant JOHN V. DOLAN ("DOLAN") was and is the superintendent of the EIUFSD, with a principal place of business and/or employ located in the County of Suffolk at 1 Craig B. Gariepy Avenue, Islip Terrace, New York 11752.

20.    Upon information and belief, at all times relevant hereto, DOLAN is responsible for the supervision of all of the educational institutions located within the EIUFSD, including the EIMS and is responsible for, inter alia, the development and implementation of the policies, customs and practices of the EIUFSD, as well as the hiring, screening, training, retention, supervision, discipline, counseling and control of the employees of the EIUFSD.  DOLAN is sued herein in his personal and official capacity.

21.    Upon information and belief, at all times relevant hereto, Defendant MARK BERNARD ("BERNARD") was and is the principal of EIMS, with a principal place of business and/or employ located in the County of Suffolk at 100 Redmen Street, Islip Terrace, New York 11752.  BERNARD is sued herein in his personal and official capacity.

22.    Upon information and belief, at all times relevant hereto, Defendant JASON STANTON ("STANTON") was and is the assistant principal of EIMS, with a principal place of business and/or employ located in the County of Suffolk at 100 Redmen Street, Islip Terrace, New York 11752.  STANTON is sued herein in his personal and official capacity.

23.     Upon information and belief, at all times relevant hereto, Defendant ALISE BECKER-SANTA ("BECKER-SANTA") is the former principal of EIMS and former Assistant Superintendent of Instruction and Personnel of EIUFSD.   Upon information and belief, on December 31, 2016, BECKER-SANTA retired from the EIUFSD and is now the Instructional Director of the Cleary School for the Deaf, though she maintains a principal place of business and/or employ located at the EIUFSD district offices in the County of Suffolk at 1 Craig B. Gariepy Avenue, Islip Terrace, New York 11752 and a principal residence located at 984 Little Whale Neck Road, Merrick, New York 11566.  BECKER-SANTA is sued herein in her personal and official capacity.

## FACTUAL ALLEGATIONS

### A.     Background Facts

24.     Plaintiff was hired by the EIUFSD in 1987 as a home economics teacher.  She was tenured in home economics in 1990 and received tenure in elementary education in 1996.

25.     Plaintiff began teaching at EIMS in February 1997.

26.     At all times relevant hereto, the EIMS was and is under the direct control, supervision and direction of the EIUFSD of which DOLAN is the superintendent and BECKER-SANTA was the assistant superintendent.

27.     For years within the EIUFSD and specifically at the EIMS, Plaintiff received glowing accolades and positive performance evaluations with relatively few and sporadic causes for reprimand over a span of thirty years.

28.     In addition, Plaintiff has received numerous awards and recognition for her civic and charity work within the community.

29.     This suddenly changed when BECKER-SANTA, BERNARD and STANTON assumed power within the EIUFSD and EIMS.

30.     Upon information and belief, BECKER-SANTA was instrumental in the hiring of BERNARD as the two are related by marriage.

31.     Under this new administration, the Plaintiff endured severe and pervasive discrimination, retaliation, excessive monitoring, trumped-up allegations of misconduct and harassment/hostile work environment from these Defendants.

**B.     The Plaintiff's Previous Formal Charge of Discrimination with the New York State Division of Human Rights**

32.     On or about October 6, 2015, as a result of the Defendants' ongoing and continuous campaign of discrimination and harassment/hostile work environment, the Plaintiff filed a formal complaint against the same Defendants herein with the New York State Division of Human Rights ("NYSDHR") that she was being discriminated against, *inter alia*, on the basis of her gender.

33.     Following the filing of the complaint with the NYSDHR, the Defendants further retaliated against Plaintiff by using fabricated allegations to have her removed from her classroom and "re-assigned," directing her to report to a tiny, closet-like empty room in the EIUFSD's District Office for the entirety of her work day.

34.     The Defendants then attempted to utilize the threat of formal prosecution of the fabricated charges as leverage to pressure Plaintiff to withdraw her complaint with the NYSDHR.

35.     As such, on January 13, 2016, Plaintiff capitulated to the Defendants and the parties entered into a Stipulation of Settlement whereby Plaintiff agreed to withdraw and release her claims against the Defendants (up until the date of the release) and the Defendants agreed not to pursue formal charges (the "Stipulation").  As part of this "settlement," Plaintiff was required to

pay to the EIUFSD the sum of five thousand dollars ($5,000.00).  Following the "settlement," Plaintiff was no longer "re-assigned" and was able to return to her classroom at EIMS.

        **C.**      **Facts Giving Rise to the Instant Claims**

36.     Before the proverbial ink was dry on the Stipulation, the Defendants continued their undying campaign of discrimination, disparate treatment, excessive monitoring, micromanagement, trumped-up allegations of misconduct and harassment creating a hostile work environment in blatant retaliation for Plaintiff having filed a complaint with the NYSDHR.

37.     On or about February 1, 2016, Plaintiff received a stern disciplinary letter from DOLAN for Plaintiff's purported failure to report certain absences which occurred during her prior period of "re-assignment."

38.     However, while on "re-assignment," Plaintiff was locked out and denied access to the EIUFSD computer system ("AESOP") which is used, among other things, to report absences.

39.     Moreover, the two telephone numbers that were given to Plaintiff to report absences by the EIUFSD were non-functioning numbers.

40.     As such, Plaintiff reported each of the absences at issue via e-mail to DOLAN himself, as well as other school administrators and her union representatives.

41.     Upon information and belief, no other EIUFSD employee had ever been locked out of, or otherwise denied access to, the AESOP system.

42.     There are instances of fellow employees downright misusing the sick time/absence system who not only failed to be reprimanded by the Defendants, but were aided by the administration to retroactively use sick time for a personal vacation.

43.     By way of non-exhaustive examples, upon information and belief, Debbie Orbell, a similarly situated teacher to Plaintiff, used two personal days and three sick days to go on a business trip with her husband.  Pursuant to school policy and the union contract, sick and personal days are to be used for sick or otherwise urgent situations and not vacations.

44.     Upon information and belief, Ms. Orbell was not reprimanded by Defendants.

45.     Upon information and belief, Michelle Wagner, a similarly situated teacher to Plaintiff, overslept, missed work without notifying anyone or utilizing the EIUFSD computer system for absences, and never made the proper arrangements for a substitute.

46.     However, upon information and belief Ms. Wagner was not reprimanded by Defendants.

47.     On or about February 11, 2016, Plaintiff received another stern disciplinary "Letter of Caution" from DOLAN admonishing her for using EIUFSD computers, network and e-mail for personal matters when they are reserved solely for the "purpose of advancing and promoting learning and teaching."

48.     However, as is well known to the Defendants, EIUFSD computers, network and e-mail are routinely utilized by teachers similarly situated to the Plaintiff, as well as other school personnel, for the personal and non-educational reasons of, *inter alia*, selling sports/concert tickets, selling college credits, soliciting employees to do side jobs over the summer and promoting potentially illegal gambling pools, without incident or discipline from the Defendants.

49.     By way of non-exhaustive examples:

    a.     Kate Boucher, a teacher within the EIUFSD, used the EIUFSD computers and network to routinely send out mass e-mails to the entire EIUFSD regarding the "lucky buck" gambling pool/fundraiser;

8

b.  Debbie Finger, an employee within the EIUFSD, used the EIUFSD computers and network to routinely send out mass e-mails to the entire EIUFSD regarding the "lucky buck" gambling pool, however, this was strictly for gambling and had no fundraising purpose;

c.  Debbie Finger additionally sent mass emails regarding illegal football gambling pools complete with point spreads using the EIUFSD computers and network;

d.  EIUFSD teachers Kate Boucher, Julie Susskind and Timothy Leigh-Manuell utilized the EIUFSD computers and network to sell or otherwise transfer credits to Dowling College; and

e.  Melissa Henderson, a teacher within the EIUFSD, used the EIUFSD computers and network to send mass e-mails to the entire EIUFSD regarding non-EIUFSD summer jobs sought by her sister's company.

50.  Upon information and belief, all of these teachers were similarly situated to the Plaintiff and although they, and others, routinely performed the same or similar conduct as the Plaintiff, they were not admonished, cautioned or otherwise disciplined like the Plaintiff.

51.  As a prime example of the EIUFSD's attitude toward Plaintiff, upon information and belief, counsel for the EIUFSD told Plaintiff's counsel: "It would give me great pleasure to be able to fire Rena"; "If I could get Rena terminated I would gladly do so"; "If she doesn't agree to get docked 6 days' pay this will get messy and I will make her life miserable"; and "I will make an example of Rena and how we can torture someone, she will lose her job if I put my mind to it."

52.  Beginning in or around March 2016, a custodian informed Plaintiff that he observed BERNARD entering Plaintiff's classroom to "snoop around" on a regular basis.

53.  Upon information and belief, BERNARD has a reputation for preying on, bullying and intimidating women who he perceives as weak within the EIUFSD, such as the Plaintiff herein.

54.     Upon information and belief, BERNARD regularly intimidated and undermined an older (now retired) teacher, Marcy Rollman, and even went through her trash to inspect what she discarded.

55.     Upon information and belief, BERNARD directed Chairman Israel Malinowitzer to send Plaintiff e-mails directing her to remove her microwave and other personal belongings from her classroom when other similarly situated teachers were able to keep similar personal belongings.

56.     Despite submitting proper receipts for out-of-pocket school related expenses, BERNARD would routinely deny Plaintiff reimbursement.

57.     In addition, BERNARD, unreasonably and without basis, demanded that Plaintiff be investigated and questioned with respect to the expenditure of the budget for the Builder's Club, for which Plaintiff is the teacher/advisor.

58.     Plaintiff repeatedly complained to DOLAN, both verbally and in writing, about BERNARD's constant bullying, harassment, intimidation and the hostile work environment he caused and begged DOLAN to help, but Plaintiff's complaints and desperate pleas were ignored.

59.     On April 13, 2016, Plaintiff received another stern disciplinary letter from DOLAN regarding the fact that a student found a "woman's undergarment" in the school's laundry machine.

60.     As discussed *supra*, Plaintiff is the teacher/advisor for the Builder's Club at EIMS. The Builder's Club is a student club which promotes, encourages and performs, *inter alia*, charity, community service and goodwill.

61.     One of the many charitable endeavors undertaken by the Builder's Club that was supervised by Plaintiff is to organize and accept clothing donations for various charities and organizations in need.  When Plaintiff and the Builder's Club receives clothing donations, Plaintiff would wash the clothes in the EIMS washing machine.

62.     The particular item of clothing at issue was part of the Builder's Club donation to Pastor Collick and his church's women's shelter.

63.     Plaintiff informed the Defendants that the undergarment was for Builder's Club and thus for school purposes.  Upon information and belief, DOLAN and/or someone under his direction and control, actually contacted Pastor Collick to check and verify Plaintiff and the Builder's Club donation to the women's shelter, which was confirmed by Pastor Collick.

64.     Notwithstanding such confirmation by the Pastor, DOLAN nevertheless sent Plaintiff a disciplinary letter "warn[ing] [her] of the serious consequences of any future incident" and directing her that the washing machine is "***to be used for the sole purpose of sustaining the educational program, not for personal use.***"  (emphasis in original).

65.     Yet, the use of the machine was not for personal use but was for a school club, the express purpose of which was to promote and perform charity and goodwill.

66.     Plaintiff's use of the machine for this purpose was not unlike similarly situated school personnel who also utilized the machine for school, team and club purposes, upon information and belief, without incident, reprimand or discipline from the Defendants.

67.     By way of non-exhaustive examples, team coaches routinely used the washing machine to wash uniforms, assistant principals and other personnel have used the machine to wash tablecloths, and the machine has been used by nurses, science teachers and other personnel to wash various other school, team and club related items.

11

68.     In or around May 2016, Plaintiff received another stern disciplinary letter from BECKER-SANTA regarding a small pocket knife and an unidentified pill found in a closet in another teacher's classroom, which was shared by Plaintiff and was accessible by other school personnel and staff (other home economics teacher, teachers' aides and custodial staff) as well as students.

69.     The pill, which was believed to be a harmless calcium pill, did not belong to Plaintiff and there was no indication that it did.  Same for the pocket knife.  In fact, the pocket knife was in a closed cabinet out of sight or reach of students.  Upon information and belief, art, science and technology teachers use and leave "exacto" knives unlocked, out in plain view and accessible.

70.     Despite myriad of other persons with access to the room and other teachers who use knives and leave them out in the open, Plaintiff was the only staff member, upon information and belief, who was interrogated and reprimanded for the harmless solitary pill and pocket knife.

71.     On or about May 18, 2016, BECKER-SANTA issued an interoffice memorandum to BERNARD, STANTON, DOLAN and others, calling for supervisory assistance to closely monitor and observe the classroom performance of the Plaintiff.

72.     Excessive observation and monitoring of Plaintiff occurs daily.

73.     On or about May 24, 2016 and May 26, 2016, STANTON, in line with his directives from BECKER-SANTA, the assistant superintendent, made two unscheduled observations of Plaintiff.

74.     In both of STANTON's reports, he gave Plaintiff a score of 10 out of a possible 32 for a low rating of "Developing" as opposed to the higher ratings of "Effective" or "Highly Effective."

75.    Upon information and belief, STANTON has never issued any teacher that low of a score on an evaluation.

76.    Quite tellingly, in several unscheduled observation reports conducted in the very same time period by other personnel who were *not named* in Plaintiff's prior NYSDHR complaint, Plaintiff's scores were <u>more than twice</u> than that of STANTON, for a rating of "Effective," i.e., score of 26 from Christian Seifert on May 23, 2016; score of 24 from Christian Seifert on May 25, 2016; score of 26 from Israel Malinowitzer on May 31, 2016; and score of 26 from Israel Malinowitzer on June 7, 2016.

77.    In or about June 2016, Plaintiff submitted her expenses from a routine supply order from King Kullen in Bay Shore for reimbursement.  Upon seeing such supplies being delivered to Plaintiff's room, BERNARD directed Israel Malinowitzer to investigate and interrogate Plaintiff regarding the order.  Upon Mr. Malinowitzer's finding that the order was routine with absolutely no wrong-doing on the part of the Plaintiff, BERNARD took the investigation a step further by requesting and inspecting Plaintiff's order and reimbursement request from the EIMS accounts payable director.

78.    On September 19, 2016, the start of a new school year, Plaintiff received a stern disciplinary letter from a new assistant principal, Nicholas Bilotti, strongly admonishing her for reasonably investigating a troubling incident whereby one of Plaintiff's students, when asked what she did during the summer, said that she spent the entire summer in a closet.

79.    Upon information and belief, based upon the language utilized in the letter and the fact that Mr. Bilotti was new to the EIMS, it is believed that this letter was actually written by BECKER-SANTA of which Mr. Bilotti was instructed to sign.

13

80.     On or about September 22, 2016, Plaintiff had a student in her home economics class with a peanut allergy.  The lesson of the day was to make cinnamon bread.

81.     Inasmuch as the bread was from a bakery and did not have a wrapper with an ingredient list, Plaintiff decided that the student would abstain from cooking that day as a safety precaution and of course would not be penalized.

82.     However, on or about September 26, 2016, Plaintiff was advised by her union president that she was being removed from her classroom and "re-assigned" for the "peanut incident."

83.     A substitute teacher was already arranged and in place.

84.     Ms. Sylvester was directed to a meeting with BERNARD and DOLAN wherein she was told she was being "re-assigned" because she *could have* endangered the student - - despite the fact that the Plaintiff instructed the student *not* to cook without penalty.

85.     BERNARD forcibly snatched Plaintiff's keys out of her hand and said "you don't need your keys."

86.     The previous school year, the very same student was in a home economics class with a different teacher who used breads and other items from the very same bakery as the Plaintiff, upon information and belief, without incident or reprimand from the Defendants.

87.     Plaintiff was again "re-assigned" and directed to report to a tiny, closet-like room in the EIUFSD's District Office for the entirety of her work day.

88.     Upon information and belief, other similarly situated teachers, such as Matthew Johnston and William Raftery, who have been "re-assigned" were assigned to their homes and not the "closet," yet Plaintiff's request for home "re-assignment" was denied.

89.     The substitute teacher who replaced Plaintiff was a much younger, recent college graduate (May 2016) who, upon information and belief, was a former student of DOLAN when he was the principal of Smithtown High School.

90.     Upon information and belief, despite the fact that substitute teachers need to be interviewed and approved, this particular substitute, who was a certified home economics teacher and had never worked in the EIUFSD prior, was in place and ready to go once Plaintiff was "re-assigned" evidencing that the wheels had been in motion to replace Plaintiff for some time.

91.     Upon information and belief, during the month of October 2016, the Defendants caused an investigator, believed to be someone from EIUFSD security, to surveil Plaintiff at her home.

92.     There was no legitimate, rational or reasonable reason for such surveillance and same was conducted by the Defendants solely as another measure to harass, threaten, frighten, bully, alarm and intimidate the Plaintiff.

93.     The Defendants directed that Plaintiff submit to a mental examination to determine her fitness to perform her duties and such examination was held on November 29, 2016.  The purported reasons for the examination were pretextual and were motivated in whole or in part by Plaintiff's age and/or gender, and/or were based upon the fact that Plaintiff had previously filed a complaint with the NYSDHR against these Defendants.

94.     Upon information and belief, the specific doctor Plaintiff was ordered to visit has a history and reputation for always siding with the school districts, including the EIUFSD, and finding against the teacher's capacity to perform his/her job functions.

95.     Plaintiff was removed from payroll by the Defendants in violation of her union contract and EIUFSD policy.

15

96.     Plaintiff's sick bank request was unjustifiably denied by the Defendants in violation of her union contract and EIUFSD policy.

97.     On or about May 11, 2017, DOLAN caused Plaintiff to be served with charges for discipline pursuant to NY Education Law §§3012 &3020-a alleging that she was permanently mentally unfit to return to her teaching position, and other charges pertaining to the student Plaintiff was concerned told her she spent the summer in a closet and for the "peanut incident."

98.     The above actions and comments by the Defendants were motivated in whole or in part by Plaintiff's age and/or gender, and/or were based upon the fact that Plaintiff had previously filed a complaint with the NYSDHR against these Defendants.  Similarly situated male employees, similarly situated younger employees and/or similarly situated employees who did not file a complaint with the NYSDHR or otherwise complain of harassment, discrimination or retaliation were not subjected to such harassment, hostile work environment, intimidation, excessive monitoring, scrutiny, micromanagement, trumped-up and exaggerated allegations of misconduct, reassignment or any other adverse employment actions.

## MONELL LIABILITY AGAINST EIUFSD AND EIMS

99.     DOLAN, as the Superintendent of EIUFSD, is a school/municipal official with final decision-making and policy making authority to establish school policy granted to him by EIUFSD, who made an unlawful final decision to carry out the actions described herein.

100.    BERNARD, as the principal of EIMS, is a school/municipal official with final decision-making and policy making authority to establish school policy granted to him by DOLAN, EIUFSD and/or EIMS, who made an unlawful final decision to carry out the actions described herein.

16

101.    EIUFSD has delegated to DOLAN and BERNARD final decision-making and policy making authority such that DOLAN and BERNARD's decisions and acts can be said to be the decisions and acts of the EIUFSD.

102.    DOLAN and BERNARD caused severe injury and damages to the Plaintiff as described above.

103.    DOLAN and BERNARD's decision and policy making caused the deprivation of Plaintiff's Federally protected rights, under color of law as described above.

104.    EIUFSD is responsible for the actions and decisions of DOLAN and BERNARD, as they possessed final policy making authority.

105.    The Defendants' unconstitutional acts, as described herein, were caused by a policy or practice, established by the EIUFSD, to give DOLAN and BERNARD final decision and policy making authority.

106.    Upon information and belief, the EIUFSD has a custom, policy and practice of varying forms of discrimination, hostile work environment, retaliation, harassment and bullying of staff as well as students, and has created an atmosphere where such unlawful conduct is accepted and condoned.

107.    By way of non-exhaustive examples:

a.    In 2007, Evelyn Lamia, a teacher, commenced an action against the EIUFSD alleging, *inter alia,* age discrimination, ethnicity and national origin discrimination and disability discrimination (Lamia v. EIUFSD, 07-cv-3126);

b.    In 2008, Anne Monahan, a clerk/typist, commenced an action against the EIUFSD alleging, *inter alia,* harassment, discrimination and retaliation for complaints of sexual harassment (Monahan v. EIUFSD, 08-cv-3262);

c.     In 2010, Rachel Primm, a minor student, commenced an action against the EIUFSD alleging, *inter alia*, sexual harassment and gender discrimination (Primm v. EIUFSD, 10-cv-1250);

d.     In 2015, Anne Tryon and David Tryon on behalf of their minor daughter, a student, commenced an action against the EIUFSD alleging, *inter alia*, deliberate indifference to bullying, harassment and threats and disability discrimination (Tryon v. EIUFSD, 15-cv-1534); and

e.     In 2016, Nashwan Uppal, a minor student, commenced an action against the EIUFSD alleging, *inter alia*, race, ethnicity, religious and national origin discrimination, disability discrimination, and deliberate indifference.

## FIRST CLAIM FOR RELIEF

### GENDER DISCRIMINATION – TITLE VII

108.   Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "107" inclusive, as if more fully set forth herein.

109.   By the acts and practices described above, Defendants discriminated against Plaintiff and took adverse employment actions against Plaintiff on the basis of her gender.

110.   Such actions significantly and materially altered the terms and conditions of Plaintiff's employment in violation of Title VII.

111.   Defendants EIUFSD and EIMS knew that its actions constituted gender/sex discrimination of such a severe and pervasive nature as to create a hostile working environment and disparate treatment and/or showed reckless disregard for Plaintiff's statutorily protected rights.

112.   Plaintiff is now suffering irreparable injury and monetary damages as a result of Defendants EIUFSD and EIMS' discriminatory conduct and will continue to do so unless and until the Court grants relief.

113.    As a direct and proximate cause of the Defendants' aforementioned highly unlawful and discriminatory actions, Plaintiff has suffered damages, including, but not limited to, severe and extreme emotional distress, pain and suffering, anxiety, depression, nightmares, sleeplessness, crying, fear, humiliation, negative stigma, stress and other psychological trauma, the extent of which remains currently unknown.

114.    The discriminatory conduct of the Defendants was willful, malicious, fraudulent, severe, pervasive, oppressive and in conscious disregard for the rights of the Plaintiff.

115.    As such, Plaintiff is entitled to recover compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with costs, attorneys' fees and expert fees which are awardable under the law.

## SECOND CLAIM FOR RELIEF

## RETALIATION – TITLE VII

116.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "115" inclusive, as if more fully set forth herein.

117.    By the acts and practices described above, Defendants retaliated against Plaintiff for her prior complaints of, *inter alia*, discrimination and hostile work environment with the NYSDHR, in violation of Title VII.

118.    Such actions significantly and materially altered the terms and conditions of Plaintiff's employment in violation of Title VII.

19

119.    Defendants EIUFSD and EIMS knew that its actions constituted retaliatory conduct of such a severe and pervasive nature as to create a hostile working environment and disparate treatment and/or showed reckless disregard for Plaintiff's statutorily protected rights.

120.    Plaintiff is now suffering irreparable injury and monetary damages as a result of Defendants EIUFSD and EIMS' retaliatory and discriminatory conduct and will continue to do so unless and until the Court grants relief.

121.    As a direct and proximate cause of the Defendants' aforementioned highly unlawful, retaliatory and discriminatory actions, Plaintiff has suffered damages, including, but not limited to, severe and extreme emotional distress, pain and suffering, anxiety, depression, nightmares, sleeplessness, crying, fear, humiliation, negative stigma, stress and other psychological trauma, the extent of which remains currently unknown.

122.    The discriminatory and retaliatory conduct of the Defendants was willful, malicious, fraudulent, severe, pervasive, oppressive and in conscious disregard for the rights of the Plaintiff.

123.    As such, Plaintiff is entitled to recover compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with costs, attorneys' fees and expert fees which are awardable under the law.

20

## THIRD CLAIM FOR RELIEF

**THE AGE DISCRIMINATION IN EMPLOYMENT ACT**
**Constructive Termination on Account of Age**

124.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "123" inclusive, as if more fully set forth herein.

125.    By the acts and practices described above, Defendants re-assigned Plaintiff and have commenced proceedings to have her terminated on account of her age, in violation of the ADEA.

126.    Such actions significantly and materially altered the terms and conditions of Plaintiff's employment and Plaintiff was re-assigned and has had proceedings brought against her for termination on account of her age, in violation of the ADEA.

127.    Plaintiff is now suffering irreparable injury and monetary damages as a result of Defendants' discriminatory conduct and will continue to do so unless and until the Court grants relief.

128.    As a direct and proximate cause of the Defendants' aforementioned highly unlawful and discriminatory actions, Plaintiff has suffered damages, including, but not limited to, severe and extreme emotional distress, pain and suffering, anxiety, depression, nightmares, sleeplessness, crying, fear, humiliation, negative stigma, stress and other psychological trauma, the extent of which remains currently unknown.

129.    The discriminatory conduct of the Defendants was willful, malicious, fraudulent, severe, pervasive, oppressive and in conscious disregard for the rights of the Plaintiff.

130.     As such, Plaintiff is entitled to recover compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with costs, attorneys' fees and expert fees which are awardable under the law.

## FOURTH CLAIM FOR RELIEF

### THE AGE DISCRIMINATION IN EMPLOYMENT ACT
### Age Discrimination/Hostile Work Environment

131.     Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "130" inclusive, as if more fully set forth herein.

132.     By the acts and practices described above, Defendants discriminated against Plaintiff and took adverse employment actions against Plaintiff on the basis of her age, thereby creating an age-based hostile work environment.

133.     Such actions significantly and materially altered the terms and conditions of Plaintiff's employment in violation of the ADEA.

134.     Defendants knew that its actions constituted age discrimination of such a severe and pervasive nature as to create a hostile working environment and disparate treatment and/or showed reckless disregard for Plaintiff's statutorily protected rights.

135.     Plaintiff is now suffering irreparable injury and monetary damages as a result of Defendants EIUFSD and EIMS' discriminatory conduct and will continue to do so unless and until the Court grants relief.

136.     As a direct and proximate cause of the Defendants' aforementioned highly unlawful and discriminatory actions, Plaintiff has suffered damages, including, but not limited to, severe and extreme emotional distress, pain and suffering, anxiety, depression, nightmares, sleeplessness, crying, fear, humiliation, negative stigma, stress and other psychological trauma, the extent of which remains currently unknown.

137.     The discriminatory conduct of the Defendants was willful, malicious, fraudulent, severe, pervasive, oppressive and in conscious disregard for the rights of the Plaintiff.

138.     As such, Plaintiff is entitled to recover compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with costs, attorneys' fees and expert fees which are awardable under the law.

## FIFTH CLAIM FOR RELIEF

### THE AGE DISCRIMINATION IN EMPLOYMENT ACT
**Retaliation**

139.     Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "138" inclusive, as if more fully set forth herein.

140.     By the acts and practices described above, Defendants retaliated against Plaintiff for her prior complaints of, *inter alia*, discrimination and hostile work environment with the NYSDHR, in violation of the ADEA.

141.     Such actions significantly and materially altered the terms and conditions of Plaintiff's employment in violation of the ADEA.

142.     Defendants knew that their actions constituted retaliatory conduct of such a severe and pervasive nature as to create a hostile working environment and disparate treatment and/or showed reckless disregard for Plaintiff's statutorily protected rights.

143.     Plaintiff is now suffering irreparable injury and monetary damages as a result of Defendants' retaliatory and discriminatory conduct and will continue to do so unless and until the Court grants relief.

144.     As a direct and proximate cause of the Defendants' aforementioned highly unlawful, retaliatory and discriminatory actions, Plaintiff has suffered damages, including, but not limited to, severe and extreme emotional distress, pain and suffering, anxiety, depression, nightmares, sleeplessness, crying, fear, humiliation, negative stigma, stress and other psychological trauma, the extent of which remains currently unknown.

145.     The discriminatory and retaliatory conduct of the Defendants was willful, malicious, fraudulent, severe, pervasive, oppressive and in conscious disregard for the rights of the Plaintiff.

146.     As such, Plaintiffs are entitled to recover compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with costs, attorneys' fees and expert fees which are awardable under the law.

## SIXTH CLAIM FOR RELIEF

**DEPRIVATION OF PLAINTIFF'S RIGHTS AS GUARANTEED BY THE UNITED STATES CONSTITUTION TO EQUAL PROTECTION UNDER THE LAW**
**(Violation of The Fourteenth Amendment – 42 U.S.C. § 1983, et seq.)**

147.     Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "146" inclusive, as if more fully set forth herein.

148.     The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows:

> *Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.* 42 U.S.C. § 1983.

149.     As set forth hereinabove, the Defendants, acting under color of state law and under a claim of authority granted to them by New York State education laws and by Department of Education rules and regulations, as well as through Federal and State funding, have jointly and/or severally deprived Plaintiff of her Fourteenth Amendment right to equal protection under the law.

150.     As set forth hereinabove, the Defendants, acting under color of state law, treated Plaintiff differently than similarly situated teachers and personnel and intentionally subjected her to harassment, hostile work environment and discrimination based upon her gender and/or age.

151.     All of the injuries described herein were actually and proximately caused by the concerted acts of the Defendants who were acting under color of state law and thus constitutes "state action" under 42 U.S.C. § 1983.

152.    The actions of Defendants were performed with actual spite, malice and an affirmative intent to injure Plaintiff, and were calculated efforts which Defendants undertook with actual knowledge that such actions were in actual and deliberate violation of Plaintiff's Constitutional rights.

153.    Plaintiff is now suffering irreparable injury and monetary damages as a result of Defendants' discriminatory conduct and will continue to do so unless and until the Court grants relief.

154.    As a direct and proximate cause of the Defendants' aforementioned highly unlawful and discriminatory actions, Plaintiff has suffered damages, including, but not limited to, severe and extreme emotional distress, pain and suffering, anxiety, depression, nightmares, sleeplessness, crying, fear, humiliation, negative stigma, stress and other psychological trauma, the extent of which remains currently unknown.

155.    The discriminatory conduct of the Defendants was willful, malicious, fraudulent, severe, pervasive, oppressive and in conscious disregard for the rights of the Plaintiff.

156.    As such, Plaintiff is entitled to recover compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with costs, attorneys' fees and expert fees which are awardable under the law.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**RETALIATION PURSUANT TO 42 U.S.C. § 1983, et seq.**

157.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "156" inclusive, as if more fully set forth herein.

26

158.   The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows:

*Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.* 42 U.S.C. § 1983.

159.   As set forth hereinabove, the Defendants, acting under color of state law and under a claim of authority granted to them by New York State education laws and by Department of Education rules and regulations, as well as through Federal and State funding, have jointly and/or severally taken adverse employment actions against the Plaintiff in retaliation for complaining of discrimination, *inter alia*, by filing a complaint with the NYSDHR.

160.   As set forth hereinabove, the Defendants, acting under color of state law, treated Plaintiff differently than similarly situated teachers and personnel and intentionally subjected her to harassment, hostile work environment and discrimination in retaliation for complaining of discrimination, *inter alia*, by filing a complaint with the NYSDHR.

161.   All of the injuries described herein were actually and proximately caused by the concerted acts of the Defendants who were acting under color of state law and thus constitutes "state action" under 42 U.S.C. § 1983.

162.   The actions of Defendants were performed with actual spite, malice and an affirmative intent to injure Plaintiff, and were calculated efforts which Defendants undertook with actual knowledge that such actions were in actual and deliberate violation of Plaintiff's Constitutional rights.

163.    Plaintiff is now suffering irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory conduct and will continue to do so unless and until the Court grants relief.

164.    As a direct and proximate cause of the Defendants' aforementioned highly unlawful, retaliatory and discriminatory actions, Plaintiff has suffered damages, including, but not limited to, severe and extreme emotional distress, pain and suffering, anxiety, depression, nightmares, sleeplessness, crying, fear, humiliation, negative stigma, stress and other psychological trauma, the extent of which remains currently unknown.

165.    The discriminatory and retaliatory conduct of the Defendants was willful, malicious, fraudulent, severe, pervasive, oppressive and in conscious disregard for the rights of the Plaintiff.

166.    As such, Plaintiff is entitled to recover compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with costs, attorneys' fees and expert fees which are awardable under the law.

## EIGHTH CLAIM FOR RELIEF

### CONSPIRACY PURSUANT TO 42 U.S.C. § 1983, et seq.

167.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "166" inclusive, as if more fully set forth herein.

28

168.    The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows:

*Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.* 42 U.S.C. § 1983.

169.    Each and all of the individually named Defendants conspired with and amongst each other in order to violate the Plaintiff's rights to equal protection, and other rights described herein.

170.    In furtherance of the conspiracy, the Defendants engaged in excessive monitoring, scrutiny, micromanagement, trumped-up and exaggerated allegations of misconduct as to the Plaintiff to build a wholly false and pretextual case for re-assignment, and ultimately termination, for the discriminatory and retaliatory reasons as detailed herein.

171.    The May 18, 2016, interoffice memorandum issued by BECKER-SANTA, as set forth herein, directing the daily monitoring and observation of the Plaintiff is, *inter alia*, an overt act done in furtherance of the conspiracy.

172.    The negative performance evaluations issued by STANTON, in line with his directives from BECKER-SANTA, when other performance evaluations conducted in the very same time period by other personnel not named in Plaintiff's prior NYSDHR complaint, were positive and more than double the scores than that given by STANTON are, *inter alia*, overt acts done in furtherance of the conspiracy.

173.    Directing that the Plaintiff submit to a mental examination based upon pretextual reasons, to a doctor with a history and reputation of siding with the school districts, including the EIUFSD, and against the teacher is, *inter alia*, an overt act done in furtherance of the conspiracy.

29

174. The myriad examples of disparate treatment vis-à-vis the admonishment, discipline and letters of caution for the Plaintiff's conduct when others similarly situated performed the exact same or highly similar conduct without incident, reprimand or discipline from the Defendants as set forth herein are, *inter alia*, overt acts done in furtherance of the conspiracy.

175. In carrying out said conspiracy, and taking all acts necessary to complete same, the aforesaid Defendants acted under color of state law, which constitutes "state action" under 42 U.S.C. § 1983.

176. Each of the individual Defendants acted deliberately in furtherance of such conspiracy, and under color of law in their respective positions within the EIUFSD in violating Plaintiff's rights, and each is therefore personally liable to the Plaintiff for the damages sustained as a result of same.

177. The actions of Defendants were performed with actual spite, malice and an affirmative intent to injure Plaintiff, and were calculated efforts which Defendants undertook with actual knowledge that such actions were in actual and deliberate violation of Plaintiff's Constitutional rights.

178. Plaintiff is now suffering irreparable injury and monetary damages as a result of Defendants' conspiracy, discriminatory and retaliatory conduct and will continue to do so unless and until the Court grants relief.

179. As a direct and proximate cause of the Defendants' aforementioned highly unlawful, retaliatory and discriminatory actions and conspiracy, Plaintiff has suffered damages, including, but not limited to, severe and extreme emotional distress, pain and suffering, anxiety, depression, nightmares, sleeplessness, crying, fear, humiliation, negative stigma, stress and other psychological trauma, the extent of which remains currently unknown.

180.    The Defendants' conspiracy was willful, malicious, fraudulent, severe, pervasive, oppressive and in conscious disregard for the rights of the Plaintiff.

181.    As such, Plaintiff is entitled to recover compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with costs, attorneys' fees and expert fees which are awardable under the law.

## NINTH CLAIM FOR RELIEF

### GENDER DISCRIMINATION - NYS HUMAN RIGHTS LAW
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367

182.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "181" inclusive, as if more fully set forth herein.

183.    By the acts and practices described above, Defendants discriminated against Plaintiff and took adverse employment actions against Plaintiff on the basis of her gender.

184.    Such actions significantly and materially altered the terms and conditions of Plaintiff's employment in violation of the NYS Human Rights Law.

185.    Defendants EIUFSD and EIMS knew that its actions constituted gender/sex discrimination of such a severe and pervasive nature as to create a hostile working environment and disparate treatment and/or showed reckless disregard for Plaintiff's statutorily protected rights.

186.    Plaintiff is now suffering irreparable injury and monetary damages as a result of Defendants EIUFSD and EIMS' discriminatory conduct and will continue to do so unless and until the Court grants relief.

31

187.    As a direct and proximate cause of the Defendants' aforementioned highly unlawful and discriminatory actions, Plaintiff has suffered damages, including, but not limited to, severe and extreme emotional distress, pain and suffering, anxiety, depression, nightmares, sleeplessness, crying, fear, humiliation, negative stigma, stress and other psychological trauma, the extent of which remains currently unknown.

188.    The discriminatory conduct of the Defendants was willful, malicious, fraudulent, severe, pervasive, oppressive and in conscious disregard for the rights of the Plaintiff.

189.    As such, Plaintiff is entitled to recover compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with costs, attorneys' fees and expert fees which are awardable under the law.

## TENTH CLAIM FOR RELIEF

### RETALIATION – NYS HUMAN RIGHTS LAW
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367

190.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "189" inclusive, as if more fully set forth herein.

191.    By the acts and practices described above, Defendants retaliated against Plaintiff for her prior complaints of, *inter alia*, discrimination and hostile work environment with the NYSDHR, in violation of the NYS Human Rights Law.

192.    Such actions significantly and materially altered the terms and conditions of Plaintiff's employment in violation of the NYS Human Rights Law.

193.    Defendants EIUFSD and EIMS knew that its actions constituted retaliatory conduct of such a severe and pervasive nature as to create a hostile working environment and disparate treatment and/or showed reckless disregard for Plaintiff's statutorily protected rights.

194.    Plaintiff is now suffering irreparable injury and monetary damages as a result of Defendants EIUFSD and EIMS' retaliatory and discriminatory conduct and will continue to do so unless and until the Court grants relief.

195.    As a direct and proximate cause of the Defendants' aforementioned highly unlawful, retaliatory and discriminatory actions, Plaintiff has suffered damages, including, but not limited to, severe and extreme emotional distress, pain and suffering, anxiety, depression, nightmares, sleeplessness, crying, fear, humiliation, negative stigma, stress and other psychological trauma, the extent of which remains currently unknown.

196.    The discriminatory and retaliatory conduct of the Defendants was willful, malicious, fraudulent, severe, pervasive, oppressive and in conscious disregard for the rights of the Plaintiff.

197.    As such, Plaintiff is entitled to recover compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with costs, attorneys' fees and expert fees which are awardable under the law.

33

## ELEVENTH CLAIM FOR RELIEF

**NYS HUMAN RIGHTS LAW**
**Constructive Termination on Account of Age**
**Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367**

198.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "197" inclusive, as if more fully set forth herein.

199.    By the acts and practices described above, Defendants re-assigned Plaintiff and have commenced proceedings to have her terminated on account of her age, in violation of the NYS Human Rights Law.

200.    Such actions significantly and materially altered the terms and conditions of Plaintiff's employment and Plaintiff was re-assigned and has had proceedings brought against her for termination on account of her age, in violation of the NYS Human Rights Law.

201.    Plaintiff is now suffering irreparable injury and monetary damages as a result of Defendants' discriminatory conduct and will continue to do so unless and until the Court grants relief.

202.    As a direct and proximate cause of the Defendants' aforementioned highly unlawful and discriminatory actions, Plaintiff has suffered damages, including, but not limited to, severe and extreme emotional distress, pain and suffering, anxiety, depression, nightmares, sleeplessness, crying, fear, humiliation, negative stigma, stress and other psychological trauma, the extent of which remains currently unknown.

203.    The discriminatory conduct of the Defendants was willful, malicious, fraudulent, severe, pervasive, oppressive and in conscious disregard for the rights of the Plaintiff.

34

204.    As such, Plaintiff is entitled to recover compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with costs, attorneys' fees and expert fees which are awardable under the law.

## TWELFTH CLAIM FOR RELIEF

**NYS HUMAN RIGHTS LAW**
**Age Discrimination/Hostile Work Environment**
**Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367**

205.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "204" inclusive, as if more fully set forth herein.

206.    By the acts and practices described above, Defendants discriminated against Plaintiff and took adverse employment actions against Plaintiff on the basis of her age, thereby creating an age-based hostile work environment.

207.    Such actions significantly and materially altered the terms and conditions of Plaintiff's employment in violation of the NYS Human Rights Law.

208.    Defendants knew that its actions constituted age discrimination of such a severe and pervasive nature as to create a hostile working environment and disparate treatment and/or showed reckless disregard for Plaintiff's statutorily protected rights.

209.    Plaintiff is now suffering irreparable injury and monetary damages as a result of Defendants EIUFSD and EIMS' discriminatory conduct and will continue to do so unless and until the Court grants relief.

210.    As a direct and proximate cause of the Defendants' aforementioned highly unlawful and discriminatory actions, Plaintiff has suffered damages, including, but not limited to, severe and extreme emotional distress, pain and suffering, anxiety, depression, nightmares, sleeplessness, crying, fear, humiliation, negative stigma, stress and other psychological trauma, the extent of which remains currently unknown.

211.    The discriminatory conduct of the Defendants was willful, malicious, fraudulent, severe, pervasive, oppressive and in conscious disregard for the rights of the Plaintiff.

212.    As such, Plaintiff is entitled to recover compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with costs, attorneys' fees and expert fees which are awardable under the law.

## THIRTEENTH CLAIM FOR RELIEF

### NYS HUMAN RIGHTS LAW
### Retaliation
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367

213.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "212" inclusive, as if more fully set forth herein.

214.    By the acts and practices described above, Defendants retaliated against Plaintiff for her prior complaints of, *inter alia*, discrimination and hostile work environment with the NYSDHR, in violation of the NYS Human Rights Law.

215.    Such actions significantly and materially altered the terms and conditions of Plaintiff's employment in violation of the NYS Human Rights Law.

216.    Defendants knew that their actions constituted retaliatory conduct of such a severe and pervasive nature as to create a hostile working environment and disparate treatment and/or showed reckless disregard for Plaintiff's statutorily protected rights.

217.    Plaintiff is now suffering irreparable injury and monetary damages as a result of Defendants' retaliatory and discriminatory conduct and will continue to do so unless and until the Court grants relief.

218.    As a direct and proximate cause of the Defendants' aforementioned highly unlawful, retaliatory and discriminatory actions, Plaintiff has suffered damages, including, but not limited to, severe and extreme emotional distress, pain and suffering, anxiety, depression, nightmares, sleeplessness, crying, fear, humiliation, negative stigma, stress and other psychological trauma, the extent of which remains currently unknown.

219.    The discriminatory and retaliatory conduct of the Defendants was willful, malicious, fraudulent, severe, pervasive, oppressive and in conscious disregard for the rights of the Plaintiff.

220.    As such, Plaintiff is entitled to recover compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with costs, attorneys' fees and expert fees which are awardable under the law.

<u>FOURTEENTH CLAIM FOR RELIEF</u>

**NYS HUMAN RIGHTS LAW**
**Aiding and Abetting**
**Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367**

221.     Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "220" inclusive, as if more fully set forth herein.

222.     By the acts and practices described above, Defendants DOLAN, BERNARD, STANTON and BECKER-SANTA aided, abetted, incited, compelled and coerced Defendants EIUFSD and EIMS' violations of the New York State Human Rights Law as set forth herein.

223.     As such, each of these Defendants are liable as "aiders and abettors" under the NYS Human Rights Law §396(1).

224.     Such actions significantly and materially altered the terms and conditions of Plaintiff's employment in violation of the NYS Human Rights Law.

225.     Plaintiff is now suffering irreparable injury and monetary damages as a result of Defendants' retaliatory and discriminatory conduct and will continue to do so unless and until the Court grants relief.

226.     As a direct and proximate cause of the Defendants' aforementioned highly unlawful, retaliatory and discriminatory actions, Plaintiff has suffered damages, including, but not limited to, severe and extreme emotional distress, pain and suffering, anxiety, depression, nightmares, sleeplessness, crying, fear, humiliation, negative stigma, stress and other psychological trauma, the extent of which remains currently unknown.

227.     The discriminatory and retaliatory conduct of the Defendants was willful, malicious, fraudulent, severe, pervasive, oppressive and in conscious disregard for the rights of the Plaintiff.

228.    As such, Plaintiff is entitled to recover compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with costs, attorneys' fees and expert fees which are awardable under the law.

## JURY DEMAND

229.    Plaintiff hereby demands a trial by jury on all causes of action and counts herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court (i) declare that the acts and practices complained of herein are in violation of Title VII, the ADEA, 42 U.S.C. § 1983 and the NYS Human Rights Law and enjoin and permanently restrain such violations; (ii) direct Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated; and (iii) award the following relief:

  a. On the First Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with interest, costs, attorneys' fees and expert fees;

  b. On the Second Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with interest, costs, attorneys' fees and expert fees;

  c. On the Third Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with interest, costs, attorneys' fees and expert fees;

d.  On the Fourth Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with interest, costs, attorneys' fees and expert fees;

e.  On the Fifth Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with interest, costs, attorneys' fees and expert fees;

f.  On the Sixth Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with interest, costs, attorneys' fees and expert fees;

g.  On the Seventh Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with interest, costs, attorneys' fees and expert fees;

h.  On the Eighth Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with interest, costs, attorneys' fees and expert fees;

i.  On the Ninth Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with interest, costs, attorneys' fees and expert fees;

j.  On the Tenth Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with interest, costs, attorneys' fees and expert fees;

k.  On the Eleventh Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with interest, costs, attorneys' fees and expert fees;

l.  On the Twelfth Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with interest, costs, attorneys' fees and expert fees;

m. On the Thirteenth Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with interest, costs, attorneys' fees and expert fees;

n.  On the Fourteenth Cause of Action, for compensatory damages in amounts to be proven at trial but expected to be not less than two million dollars ($2,000,000.00) and punitive damages in amounts to be proven at trial but expected to be not less than five million dollars ($5,000,000.00), together with interest, costs, attorneys' fees and expert fees; and

o.  Such other and further relief as to this Court may appear just and appropriate.

Dated:  Merrick, New York
May 22, 2017

LAW OFFICES OF
DAVID A. ANTWORK, P.C.

By: _____s/_____
DAVID A. ANTWORK (DA1168)
1757 Merrick Avenue, Suite 207
Merrick, New York 11566
T: (631) 879-7456
F: (516) 746-2611
dantwork@davidantworklaw.com
*Attorneys for Plaintiff*

**<u>VERIFICATION</u>**

STATE OF NEW YORK    )
                           ) ss.:
COUNTY OF SUFFOLK    )

       RENA SYLVESTER, being duly sworn, deposes and says:

     1.     That I am the Plaintiff in the within action.

     2.     That I have read the foregoing VERIFIED COMPLAINT and know the contents thereof; the same is true to deponent's own knowledge, except as to those matters said to be upon information and belief, and as to those matters, deponent believes them to be true.

                                                        \_\_\_\_\_ s/ Rena Sylvester _____
                                                        RENA SYLVESTER

Sworn to before me on this
22nd day of May, 2017

      _____ s/ David A. Antwork _____
         Notary Public